UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT S. LOTHROP,               )
Individually and as              )
Administrator of the Estate      )
of ROBERT E. LOTHROP             )
(Deceased),                      )
                                 )
              Plaintiffs,        )    CIVIL ACTION NO.
                                 )    13-13007-DPW
v.                               )
                                 )
NORTH AMERICAN AIR CHARTER,      )
INC., AIRBORNE MAINTENANCE,      )
INC., AIR HAMPTONS, INC.,        )
and CONTINENTAL MOTORS, INC.,    )
                                 )
              Defendants.        )

MEMORANDUM AND ORDER
March 26, 2015

**I. BACKGROUND**

This action arises from a plane crash on December 5, 2010
in Massachusetts.  The flight originated in New York and was
returning to New York after a stop in New Hampshire when the
engine lost power.  The airplane landing gear hit electrical
transmission wires, causing the airplane to flip during its
forced landing.  Two of the passengers, Robert E. Lothrop and
William Schley, died as a result of the accident.  Another
passenger and the pilot survived.

***A.   Procedural Background***

Robert S. Lothrop, Administrator of the Lothrop estate, and
Kevin Earls, Administrator of the Schley estate, brought actions

against North American Air Charter, Inc. ("North American"), Airborne Maintenance, Inc. ("Airborne"), and Air Hamptons, Inc. ("Air Hamptons") in both New York and Massachusetts state court. They claimed wrongful death of the decedents and loss of consortium due to negligence and breach of warranty and also brought a claim for product liability against Continental Motors, Inc. ("Continental Motors").

North American removed the Massachusetts action to federal court on the basis of federal diversity jurisdiction. However, plaintiff Earls and several defendants were citizens of New York. North American argued that Earls' claims were fraudulently joined and therefore that Earls' citizenship should be disregarded for jurisdictional purposes. North American made two arguments regarding fraudulent joinder: that the lawyer who signed the complaint on behalf of Earls was not admitted to practice in Massachusetts and that Earls had not paid the proper filing fees. I held that North American failed to show that Earls was fraudulently joined and I remanded the case to state court for resolution of North American's state law objections to the inclusion of Earls in this action.

While the case was before me prior to remand, North American took steps to press its claim of lack of personal jurisdiction. North American filed an answer asserting the affirmative defense of lack of personal jurisdiction. North

American's memorandum in opposition to Lothrop's motion to remand also asserted that Massachusetts courts lack personal jurisdiction over North American. In addition, the parties filed a report of a planning meeting in which North American proposed a discovery plan that included limited jurisdictional discovery before any merits discovery and motions to dismiss for lack of personal jurisdiction.

Once back in state court after remand, North American filed a motion titled "Motion to Strike," claiming that the Earls case was never properly commenced. During a hearing on the motion to strike in Suffolk County Superior Court, counsel for Earls explained to Judge Locke that the plaintiffs had filed in New York concurrently with the action in Massachusetts because of North American's contention that Massachusetts courts lack personal jurisdiction over North American. The motion to strike was denied by Judge Locke.

Ultimately, North American and Earls settled and Earls entered a stipulation of dismissal of his claims in state court. North American then removed this action again to federal court. North American now presses for dismissal on the ground that there is no personal jurisdiction over it in Massachusetts. Lothrop continues to maintain that Massachusetts courts do, in fact, have personal jurisdiction over North American.

Meanwhile, Lothrop also moved to dismiss his claims against Continental Motors, Airborne Maintenance, and Air Hamptons, on the basis that Lothrop and these three settling defendants have settled in good faith and without fraud, collusion, or dishonesty.  Lothrop presented problems including questionable liability, potential jurisdictional defenses, and perceived relative culpability, as reasons for the settlements with the three defendants,.  After reviewing the submissions and without objection from any party, I determined, following a hearing in this matter, that the settlements with the settling defendants were in good faith in accordance with MASS. GEN. LAWS CH. 231B, § 4.  I thereupon allowed defendants to be dismissed from this action.  With the case in that posture, I turn now to resolve the motion to dismiss for lack of personal jurisdiction pressed by the remaining defendant, North American.

## II. ANALYSIS

### A.  *Waiver*

As a threshold matter, Lothrop argues that North American has waived its personal jurisdiction defense through its actions in this litigation.

#### 1. Waiver by Omission

Lothrop first claims that North American has waived its personal jurisdiction defense by failing to include the defense in its motion before the state court.  The proceedings before

the state court were conducted, of course, under state procedural rules. Rule 12(g) of the Massachusetts Rules of Civil Procedure requires a party that makes a motion to dismiss to include in the motion any defense that may be raised by motion and prohibits a party from making a new motion based on an omitted defense or objection.[1]

Lothrop concedes that two of the grounds asserted in the motion to strike — failure to have the complaint signed by a Massachusetts attorney and impermissible joinder — are arguably not motions to dismiss under Rule 12, but are rather addressed by other rules. Rule 11 permits the striking of a pleading not signed by a Massachusetts lawyer and Rule 21 permits dropping an improperly joined party. He argues, however, that despite the motion to strike nomenclature, seeking to have the action dismissed for failure to pay the filing fee is a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted because there is no other rule of civil procedure that would permit dismissal for failure to pay a fee. In this connection, Lothrop cites *Heendeniy* v. *Swiftwill*, *Inc.*, 2011 WL 7718431 at *2 (Mass. Super. 2011) for the proposition that a party's failure to pay the required fee results in dismissal.

---

[1] This rule is similar to Rule 12(g)(2) of the Federal Rule of Civil Procedure, providing that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from the earlier motion."

He argues that North American failed to include the defense of lack of personal jurisdiction in the earlier motion, that therefore North American has waived this defense, and that this motion to dismiss for lack of personal jurisdiction is barred under Rule 12(g).

North American counters that the motion to strike was directed to the argument that Earls had not properly commenced an action in the first instance and that any action by Earls was a nullity, not that the complaint failed to state a claim upon which relief could be granted. Rule 3 of the Massachusetts Rules of Civil Procedures requires a party to mail or file a complaint with the entry fee prescribed by law in order to commence a civil action. North American argues that the fact that the complaint could have been dismissed under *Heendeniy* for failure to pay a fee does not mean that dismissal is generally an appropriate response to failure to commence an action properly under Rule 3. In *Heendeniy*, North American observes, the plaintiff filed the action *pro se* accompanied by an Affidavit of Indigency seeking waiver of the filing fee. His filing of the affidavit meant that the action was properly commenced. Mass. Gen. Laws c. 261, § 27C(1)(where an affidavit of indigency is filed with the complaint, "the clerk shall receive the complaint . . . and proceed as if all regular filing fees had been paid.") After a hearing, however, the Superior

Court later determined that the plaintiff could pay a partial
filing fee and *sua sponte* ordered that the case, which was
properly commenced in the first instance, be dismissed if he did
not pay the reduced fee within ten days of the order.  In
contrast, North American here contends that the filing by an
unlicensed lawyer without the proper fees on behalf of Earls
meant that the action was never properly commenced at all under
Rule 3.

North American has not identified, nor have I found, any
case law distinguishing a motion to strike or dismiss an action
as a nullity from a motion to dismiss under Rule 12(b).[2]
Nonetheless, a close look at the motion to strike and Judge
Locke's September 30, 2013 decision denying the motion (Doc. 16-
38) makes clear that the argument made by North American about

---

[2]  In Superior Court, North American cited *Ownes* v. *Amtrak*, 1998
WL 448908 (Mass. Sup. Ct. July 31, 1998) in its motion to
strike.  In *Ownes*, the Superior Court granted summary judgment
as to one count of the complaint on statute of limitations
grounds because the plaintiff had not timely paid the full
filing fee. *Id.*  While that decision supports the idea that
failure to submit the proper filing fee is a failure to commence
the action under Rule 3, it does not address the status of a
motion to strike that raises this issue at an earlier stage.  In
*Hanlon* v. *Floridia*, 1994 Mass. App. Div. 98 (Mass. Dist. Ct.
1994), the court addressed what may be the analogous case of a
plaintiff who failed to file her Statement of Damages with her
complaint.  The court noted that this meant that her case had
been improperly commenced, and instructed the defendant to "move
for the dismissal of this action" if the plaintiff did not
properly move for late filing of the Statement of Damages.
While the court used the general term dismissal, it did not
explain the procedural mechanism under the Rules of Civil
Procedure that should be used for that situation.

the filing fees in its motion to strike was inextricably bound up in the argument about improper joinder.

The motion to strike was brought pursuant to Rules 11 and 21 of the Massachusetts Rules of Civil Procedure.  The motion is composed of one section about the fact that the attorney who signed the complaint was not authorized to practice in Massachusetts and a second section about the failure to pay the required filing fees.  This second section included a preliminary argument that the plaintiffs actually allege separate, not joint recovery, under the joinder rules of Rule 20 for the loss of consortium claims and then a secondary argument that therefore Earls was required to pay an additional filing fee as specified in Rule 20.  Judge Locke's decision denying the motion to strike for failure to pay the filing fee stated that he determined that the filing fee paid at the time the complaint was filed was properly calculated under Rule 20(a) of the Massachusetts Rules of Civil Procedure, governing the permissive joinder of parties.  Both the motion to strike and the decision treated the issue of the filing fee as completely determined by the propriety of joinder and the possibility of joint recovery.  Regardless of whether there is any difference generally between a motion to dismiss a pleading and a motion to strike or dismiss an improperly commenced action as a nullity, the focus in North American's motion to strike was on a question of proper joinder,

which could have led to dropping Earls as a party under Rule 21.
The motion to strike was not strictly speaking a Rule 12 motion
to dismiss, and therefore North American's defense of lack of
personal jurisdiction has not been waived by omission from its
earlier filing.

2. Waiver by Participation

Lothrop next claims that North American waived its defense
of lack of personal jurisdiction through participation in this
litigation.  North American raised lack of personal jurisdiction
as an affirmative defense in its answer to the complaint.
Nonetheless, under Massachusetts law, "where a party raises the
defense of lack of personal jurisdiction in responsive pleading,
the party's subsequent conduct may in some circumstances result
in a forfeiture of that defense." *American Intern. Ins. Co.* v.
*Robert Seuffer GMBH & Co.*, 9 N.E.3d 289, 291 (Mass 2014).  The
determination whether this defense is forfeited is fact-
specific.  *Id.*

Lothrop details the many ways in which North American has
participated in this proceeding so far: filing a notice of
removal, opposing remand, answering the complaint, stipulating
to the dismissal of defendants, opposing Lothrop's motion to
admit an attorney *pro hac vice*, filing the motion to strike,
stipulating to a change of venue, and assenting to a motion to
admit attorneys for defendant Air Hamptons *pro hac vice*.

Lothrop argues that North American's extensive participation in this litigation means that it has waived its personal jurisdiction defense.

Lothrop relies on *Sarin* v. *Ochsner*, 721 N.E.2d 932, 933 (Mass. App. Ct. 2000) as an example of the minimal participation that can constitute waiver, noting that the defendants' personal jurisdiction argument was deemed waived in *Sarin* where they appeared at two hearings on damages and filed motions to disqualify counsel, stay discovery, and remove a default. In *Sarin*, however, the defendants sought to assert lack of personal jurisdiction almost three years after the entry of a default judgment against them for failure to comply with discovery orders. *Id.* The character of the defendants' prior participation combined with the very advanced posture of the proceedings significantly differentiates *Sarin* from this matter.

Another case relied upon by Lothrop as showing the minimal conduct needed to find waiver of any personal jurisdiction defense is *Plunkett* v. *Valhalla Investment Services, Inc.*, 409 F.Supp.2d 39 (D. Mass. 2006). In *Plunkett*, the defendant "marginally" asserted the defense of lack of personal jurisdiction in its answer, then participated in a scheduling conference, engaged in a colloquy with the court about the nature of the case, conducted discovery, entered into a stipulation, consented to alternative dispute resolution, and

moved for admission of their counsel *pro hac vice* over a period
of eleven months before filing a motion asserting this defense.
*Id.* at 42. At least some of the conduct of the defendant in
*Plunkett*, such as participating in alternative dispute
resolution through the court and engaging in merits discovery,
are the types of merit-focused activities that can result in the
waiver of a jurisdictional defense. *See American Intern.*, 9
N.E.3d at 297 ("Parties who opt to raise such a defense [of lack
of personal jurisdiction] in a responsive pleading may ensure
its preservation by moving to dismiss pursuant to rule 12(b)(2)
within a reasonable time, prior to substantially participating
in discovery and litigating the merits of the case.")(internal
quotation marks omitted).

Despite the fact that the litigation now before me has
already seen the expenditure of significant judicial resources,
the action is still in a preliminary posture. The focus until
this point has been on determining an appropriate forum and the
status of the claims brought by Earls in state court. No action
has been taken on the merits. North American has consistently
taken steps to advance its affirmative defense of lack of
jurisdiction. The fact that North American did not conduct
jurisdictional discovery and file this motion while the back-
and-forth about removal and remand was underway does not suggest
waiver. North American made its motion promptly once the action

landed squarely in this forum and before any merits discovery or determination had begun.  I conclude that Northern American has not waived its personal jurisdiction defense through its participation thus far in this litigation.

**B.    *Personal Jurisdiction***

When a motion to dismiss due to lack of personal jurisdiction is filed, "it is plaintiff's burden to demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution."  *United Elec. Radio and Mach. Workers of America v. 163 Pleasant Street Corp.*, 987 F.2d 39, 43-44 (1st Cir. 1993)(internal quotations and corrections omitted).  My review will be conducted under the "prima facie" standard, in which the plaintiff must make affirmative proof of the facts in the record that provide jurisdiction.  *Id.* at 44.  I accept all properly supported proffers of evidence by plaintiff as true and determine, as a matter of law, whether the plaintiff has demonstrated that personal jurisdiction exists over North American.  *Id.*

The Massachusetts Long Arm Statute, Mass. Gen. Laws c. 223A § 3, provides in relevant part:

> A court may exercise personal jurisdiction over a
> person, who acts directly or by an agent, as to a
> cause of action in law or equity arising from the
> person's
> (a) transacting any business in this commonwealth;

12

(b) contracting to supply services or things in this commonwealth;
(c) causing tortious injury by an act or omission in this commonwealth;
(d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth. . .

If a defendant's conduct falls within one of the subsections of the Massachusetts long-arm statute, then I may exercise jurisdiction over the defendant unless doing so would be inconsistent with the Due Process Clause of the United States Constitution. Due Process requires that a nonresident defendant have significant enough "minimum contacts" with Massachusetts that it would not offend "traditional notions of fair play and justice" to maintain a suit against the defendant in Massachusetts. *Good Hope Industries, Inc.* v. *Ryder Scott Co.*, 389 N.E.2d 76, 80 (Mass. 1979)(quoting *International Shoe Co.* v. *Washington*, 326 U.S. 310 (1945)).

North American did not own the plane that was involved in the crash and has had no customers located in Massachuestts between 2009 and 2013. (Ross Aff., Doc. No. 50-1). Less than 0.01% of North American's total gross revenue came from services that included any flights to, through, or from Massachusetts. (Id.) North American argues extensively that it is not subject to personal jurisdiction in Massachusetts on its own account.

Lothrop seems to concede this point, since he does not make any meaningful argument to the contrary.  Lothrop instead argues that there is personal jurisdiction over North American because it is the alter-ego of another company, Air Hamptons.

North American maintains that it is not an alter-ego of Air Hamptons but does not challenge Lothrop's claim that Air Hamptons is subject to personal jurisdiction in Massachusetts because Air Hamptons operated the aircraft that crashed in Massachusetts and Air Hamptons' aircraft flew into or out of Massachusetts over fifty times from 2007-2010.

## C.   *Alter-Ego Personal Jurisdiction*

### 1. Choice of Law

At the outset, I address the choice-of-law issue the parties have neglected.  Both parties rely on Massachusetts law in their memoranda.  Lothrop claims that there is no significant distinction between Massachusetts and New York law, and North American claims that New York law is even less permissive than Massachusetts law.  North American argues in a footnote of its reply brief that New York substantive law should be applied to the alter-ego analysis.  Nonetheless, North American claims, without explaining why this should change the choice-of-law analysis, that it is conducting its analysis under Massachusetts law because this is a Massachusetts jurisdictional determination

and because it believes that because it prevails under Massachusetts law it *a fortiori* prevails under New York law.

Massachusetts law is not entirely settled regarding whether determinations about piercing a corporation's veil should automatically be made under the law of the state of incorporation, *see e.g. Lily Transp. Corp.* v. *Royal Inst. Servs., Inc.*, 832 N.E.2d 666, 674 n.15 (Mass. App. Ct. 2005)(applying law of the place of incorporation); *In re Cambridge Biotech Corp.*, 186 F.3d 1356, 1376 n.11 (Fed. Cir. 1999)(applying Massachusetts law, same), or whether the place of incorporation is one of a number of factors considered, *see e.g., Evans* v. *Multicon Const. Corp.*, 574 N.E.2d 395, 400 n.7 (Mass. App. Ct. 1991)(considering multiple factors under the *Restatement (Second) of Conflict of Laws* § 188); *John T. Callahan & Sons, Inc.* v. *Dykeman Elec. Co.*, Inc. 266 F.Supp.2d 208, 230 (D. Mass. 2003)(same).  Both positions were noted by the Supreme Judicial Court in *Scott* v. *NG U.S. 1, Inc.*, 881 N.E.2d 1125, 1131, n.13 (Mass. 2008), which did not resolve the disagreement because the parties in that case did not dispute the proper law to apply.  Regardless, even if the place of incorporation of North American were but one of a number of factors to consider, I find that New York has the more significant relationship to the claims against North American in this case.  *See* Restatement (Second) of Conflict of Laws § 188.

Both North American and Air Hamptons were incorporated in New York and any maintenance that forms the basis of the allegations against North American occurred in New York.

In the end, I find the core of the choice-of-law analysis to be the same when analyzing corporate veil-piercing under New York or Massachusetts law, although North American is correct that the case for maintaining corporate distinctiveness is even stronger under New York law. In this Memorandum, I will continue consistently with the parties' reliance upon a Massachusetts analysis while noting relevant New York case law in the footnotes.

## 2. Substantive Considerations

Lothrop argues that North American is an alter-ego of Air Hamptons such that personal jurisdiction over Air Hamptons is sufficient to establish personal jurisdiction over North American as well. In *My Bread Baking Co.* v. *Cumberland Farms, Inc.*, 233 N.E.2d 748 (Mass. 1968), the Supreme Judicial Court discussed when it is appropriate under Massachusetts law to "disregard[] the corporate fiction." *Id.* at 752. The Supreme Judicial Court acknowledged the "principle that corporations are generally to be regarded as separate from each other and from their respective stockholders," but observed that this "general principle is not of unlimited application." *Id.*

The Supreme Judicial Court discussed two circumstances in which a relationship between two corporations may result in joint liability. The first is "when there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious consequence of the inter-corporate relationship." *Id.* at 752. The second is "when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting." *Id.* The court went on to provide some examples, such as failure to make clear which corporation is taking action in a particular situation or failure to observe formal barriers between the corporations, that could lead to the "confused intermingling" that "may warrant some disregard of the separate entities in rare particular situations in order to prevent gross inequity." *Id.*[3]

---

[3] Under New York law, a corporation is considered to be a mere alter ego when it "has been so dominated by . . . another corporation . . . and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own.'" *Gartner* v. *Snyder*, 607 F.2d 582, 586 (2d Cir. 1979). Courts will only pierce the corporate veil under New York law where there has been  either a "showing of fraud or . . . complete control by the dominating party that leads to a wrong

The Massachusetts standard for disregarding the separate entities of different corporations is a demanding one. *See My Bread Baking*, 233 N.E.2d at 752.[4] Massachusetts cases since *My Bread Baking* have repeatedly confirmed the principle that corporations are generally treated as "separate and distinct entities" notwithstanding relationships between them, *Scott*, 881 N.E.2d at 1131, and that the corporate veil may be pierced only with reluctance and in extreme circumstances when compelled by reasons of equity. *See, e.g., Attorney General* v. *M.C.K., Inc.*, 736 N.E.2d 373, 380 (Mass. 2000)("The doctrine of corporate disregard is an equitable tool that authorizes courts, in rare situations, to ignore corporate formalities, when such disregard is necessary to provide a meaningful remedy for injuries and to avoid injustice."); *Spaneas* v. *Travelers Indem. Co.*, 668 N.E.2d

---

against third parties.'" *Wm. Passalaqcua Builders, Inc*. v. *Resnick Developers, Inc.*, 933 F.2d 131, 138 (2d Cir. 1991). A significant difference between Massachusetts and New York law is that under New York law there must be a direct connection between any abuse of the corporate form and the injury to the plaintiff. "While complete domination of the corporation is the key to piercing the corporate veil . . . such domination, standing alone, is not enough; some showing of a wrongful or unjust act toward plaintiff is required. The party seeking to pierce the corporate veil must establish that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene." *Morris* v. *New York State Dep't of Taxation & Fin.*, 623 N.E.2d 1157, 1161 (N.Y. 1993).

[4] Under New York law, "piercing the corporate veil is a remedy undertaken with extreme reluctance." *Lakah* v. *UBS*, 996 F.Supp.2d 250 (S.D.N.Y. 2014).

325, 326 (Mass. 1996)("Only in rare instances, in order to prevent gross inequity, will a Massachusetts court look beyond the corporate form").

Here, Lothrop does not contend that the first circumstance identified in *My Bread Baking*, 233 N.E.2d at 752, for corporate veil piercing — requiring fraudulent or injurious consequences that stem from the relationship between the corporations — is met.  Rather, he argues that the "confused intermingling" between the two corporations and "substantial disregard" of corporate form, the second circumstance identified in *My Bread Baking*, id., is met here.  Courts considering whether to set aside corporate formalities consider twelve factors:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.

*Attorney Gen*. v. *M.C.K., Inc.*, 736 N.E.2d at 380 n.19.[5]

---

[5]  Under New York law, the list of facts relevant to whether there is "complete control" by one corporation against another is:
> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, ... (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5)

These factors are not simply added up, but rather are considered in an integrated manner based on all of the facts presented.

The primary evidence relied on by Lothrop is the 30(b)(6) deposition of the corporate representative of North American, Jonathan Ross.  In this deposition, Ross explained that North American operates chartered flights and that North American exclusively operates airplanes that are on its own air carrier certificate.  North American and Air Hamptons have separate operations specifications that apply to its crews, training, drug testing, and operational control.  He testified, "the FAA comes out and determines that those things are kept very separate," referring to the separate operations of the two companies.[6]

---

common office space, address, and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*Wm. Passalacqua Builders,* 933 F.2d at 139 (citations omitted).

[6]  North American explains further in its reply memorandum that the two companies have different types of air carrier certificates, with North American permitted to manage and operate large, long range, intercontinental business jet transport category aircraft, and Air Hamptons permitted to manage and operate smaller, shorter range, piston-engine and

F. Jay Schley is the owner and sole shareholder of North
American, and serves as President and CEO of North American.  He
is also the President and CEO of Air Hamptons.  There is no
Board of Directors for either company, and F. Jay Schley is the
sole corporate director of both.  While Lothrop claimed in his
memorandum that the positions at both companies are "one and the
same to him," meaning to F. Jay Schley, in fact the deposition
testimony was that F. Jay Schley considered the CEO and
President positions within one company to be one and the same,
and Ross was not sure whether he held both titles or just one.
Ross serves as the Director of Operations for both North
American and for Air Hamptons.[7]

North American, Air Hamptons, and Airborne Maintenance
share some resources: North American and Air Hamptons share a
common address and telephone number, an inter-office telephone
extension network, as well as an "@naac.com" email domain.
Other resources are shared between North American and Air

_____

turboprop aircraft similar to the aircraft involved in this
accident.
[7]  North American takes issue with the characterization by
Lothrop that the two corporations "share the same Director of
Operations," contending instead that Ross holds two separate
roles in relation to the two companies.  The deposition record
supports that these were two separate roles, not one role across
the two companies.  North American distinguishes between Ross's
roles at the two companies explaining that he only has authority
to hire for Air Hamptons in his capacity as Director of
Operations for Air Hamptons, not in his capacity as Director of
Operations for North American.

Hamptons.  Receptionists and salespeople employed by North American and whose W-2 tax forms are issued by North American also perform work for Air Hamptons.  An in-house accountant performs accounting duties for North American, Air Hamptons, and Airborne Maintenance and is paid by North American.  Some pilots fly for both companies but are paid by North American.  Ross testified, however, that whenever a pilot flies for Air Hamptons, that pilot must be qualified and acting as an Air Hamptons pilot.

The two companies are presented on North American's website as "sister compan[ies]," and Ross as the corporate witness for North American described the arrangement between North American and Air Hamptons for borrowing workers to help with maintenance as a "symbiotic relationship that is ongoing."[8]  Ross clarified, however, that FAA regulations do not permit "mingling of operating authority" between different companies.

---

[8] Lothrop also points to evidence in the record about North American's close dealing with a third company, defendant Airborne Maintenance, noting that North American has loaned money to Airborne maintenance, sometimes shares workers with them, and operates under verbal agreements between F. Jay Schley, the owner of North American, and his son Jay Schley, Jr., owner of Airborne Maintenance.  The relationship between North American and Airborne Maintenance does not support Lothrop's allegations about the relationship between North American and Air Hamptons — other than perhaps through some attenuated propensity argument that Lothrop does not explicitly make and that would not affect my analysis of the relationship between North American and Air Hamptons in any event.

While Lothrop has shown a strong relationship between the two companies, the evidence Lothrop points to in the record does not support a finding that there is such confused intermingling or disregard of the separate corporate forms as could justify treating these two separate corporations as a single entity. While Lothrop points to shared employees and services, there is no evidence that one corporation controlled or used the other corporation other than for the mutual benefit of both.  There is no evidence that the two companies' sharing of the same physical space, phone number, or email address created any confusion in record keeping or was confusing to other companies or individuals that interacted with these two corporations.  There is no evidence about the capitalization of either corporation, improper segregation of separate business records or finances, or any improper use of the corporations' funds.  There is no evidence, or even allegation, that the corporations were used in promoting fraud.

The evidence that Lothrop points to shows common ownership and management as well as cooperation and some sharing of resources.  "[C]ommon ownership of the stock of two or more corporations together with common management, standing alone, will not give rise to liability on the part of one corporation for the acts of another corporation," *My Bread Baking*, 233 N.E.2d at 752.  Here, Lothrop has presented facts that also show

a high degree of cooperation between the two corporations, including occasionally sharing costs and personnel or providing services to each other.  This cooperation demonstrates a close working relationship but not disregard of the separate entities. Lothrop has not demonstrated that there are other factors present here that would "permit the conclusion that an agency or similar relationship exists between the entities."  *Id.*[9]

Even if I were to find that Lothrop had presented evidence of a confused intermingling of the corporations and substantial disregard of corporate form, Lothrop has failed to allege equitable concerns sufficient to spur me to consider disregarding the corporate form here.[10]  The "gross inequity" that can lead to the piercing of the corporate veil typically requires some finding that the corporation engaged in misconduct through the corporate form.  "There is present in the cases which have looked through the corporate form an element of

---

[9]     The New York factors also include common office space and telephone numbers, which the two corporations do share here, and there is also some evidence that the dealings between the corporations may have been less than entirely at arms length, such as by being less formalized and more flexible.  Similar to Massachuestts, however, the majority of the New York factors — particularly the ones having to do with finances — are not met in this case.

[10]    Under New York law, even if I were to find that North American so dominated Air Hamptons that it could be said to have exerted "complete control" over Air Hampton, Lothrop has not identified any injury suffered by him or another third party as a result of this domination or other abuse of the corporate form as required for a New York court to pierce the veil of the two corporations.  *See Morris*, 623 N.E.2d at 1161.

dubious manipulation and contrivance [and] finagling...." *Scott,*
881 N.E.2d at 1132 (quoting *Evans,* 574 N.E.2d 395). *See also*
*United States* v. *Bestfoods*, 524 U.S. 51, 62 (1998)(discussing
the fundamental principle of corporate law that "the corporate
veil may be pierced . . . when, inter alia, the corporate form
would otherwise be misused to accomplish certain wrongful
purposes . . .").

Lothrop asserts that he will suffer gross inequity if North
American is permitted to shield itself from liability in a
Massachusetts forum on a claim of lack of personal jurisdiction.
While he claims that I should not allow North American to "evade
liability for its negligence," in reality the question is not
whether North American can evade liability but only whether it
can properly be brought into court in Massachusetts for an
evaluation of liability.  Lothrop commenced an identical action
in New York against the same defendants, which has been
consolidated with the personal injury action of the passenger
and also includes the pilot as a party.  The conduct at issue
concerning the maintenance of the aircraft took place in New
York and the parties are all located in New York.  This action
can go forward in New York.  To be sure, Lothrop is apprehensive
that New York damages may not be as generous as those available
in Massachusetts.  But that potential has no role in a
determination of corporate veil piercing.  Maintaining the

separate corporate entities of these two companies does not create a "gross inequity" merely by requiring Lothrop to pursue claims against North American in a jurisdiction whose courts have personal jurisdiction over the company itself.

### III. CONCLUSION

For the reasons set forth more fully above, I GRANT Defendant North American's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 49).

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT